**PENNINGTON OLIAK PLLC**
Beth A. Oliak (BO3730)
Edward A. Pennington (pro hac to be filed)
1055 Thomas Jefferson Street, NW Ste. L35
The Foundry Building
Washington, DC  20007
(202)897-2725
(fax) (202)838-8245
oliakb@pennoliak.com
epennington@pennoliak.com

*Attorneys for GFI USA, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| _____ ) | | |
| GFI USA, LLC, ) | | |
| ) | | |
| Plaintiff, ) | Case No. 23-cv-_____ | |
| ) | | |
| - v - ) | | |
| ) | | |
| GITN SDN, BERHAD, ) | **COMPLAINT AND** | |
| **)** | **DEMAND FOR JURY** | |
| Defendant. ) | | |
| _____ ) | | |

Plaintiff GFI USA, LLC ("GFI"), having its principal place of business at 2028 E Ben White Blvd, Suite 240-2650, Austin, Texas 78741, by and through its attorneys, Pennington Oliak PLLC, for its Complaint against defendant GITN SDN. BERHAD ("GITN"), alleges as follows:

### INTRODUCTION

1.     This action includes multiple counts for infringement of copyright under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*., breach of contract, unjust enrichment, trespass to chattels, and conversion.

2.      GFI has been forced to bring this action because a customer and licensee of GFI's software, Defendant GITN SDN. BERHAD ("GITN"), refused to renew its license to GFI's software yet continued to use the software without a license or permission.  GITN surreptitiously used GFI's software without affirmatively advising GFI it was doing so in breach of its contractual obligations and in violation of GFI's copyrights.

3.      Through built-in functions in GFI's software which transmit data back to GFI on a daily basis built into and activated by GITN, GFI discovered GITN's unauthorized and unlicensed use of GFI software.  This case seeks damages, including compensatory and punitive damages, for GITN's knowing theft of intellectual property rights.

**THE PARTIES**

4.      Plaintiff GFI is a limited liability company (LLC) organized and existing under the laws of the State of Delaware, having its worldwide corporate headquarters at 2028 E Ben White Blvd., Suite 240-2650, Austin, Texas.  GFI was formerly known as GFI USA, Inc. and was converted to an LLC and renamed GFI USA, LLC on October 31, 2022.

5.      Plaintiff GFI is a software company that develops, owns, and licenses intellectual property through a variety of enterprise-quality Information Technology ("IT") solutions for businesses and governments.  GFI's library of security, network management and communication software products offered commercially include KerioControl, LanGuard, MailEssentials, Archiver, KerioConnect, FaxMaker, Helpdesk, SD-WAN, and Exinda Network Orchestrator (the latter, "Exinda Software").

6.      Upon information and belief, Defendant GITN is a private company limited by shares, existing and incorporated under the laws of Malaysia.  GITN is a wholly owned

subsidiary of Telekom Malaysia Berhad ("Telekom Malaysia") and has a registered address at Level 51, North Wing, Nenara TM, Jalan Pantai Baharu, 50672 Kuala Lumpur MALAYSIA.

7.     Upon information and belief, Telekom Malaysia has two offices in the United States, one at 8320 Old Courthouse Road, Suite 201, Vienna, Virginia, and another at 6700 Koll Center Parkway, Suite 250, McLean, Virginia.  Telekom Malaysia subsidiary Telekom Malaysia USA, Inc. has an office at 7925 Jones Branch Drive, McLean, Virginia.

8.     According to publicly available information, as well as information and belief, Telekom Malaysia is Malaysia's largest telecommunications company and provides telecommunications services that connect Malaysian callers and called parties to the world, including the USA.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §1332 because the dispute is between a citizen of the state of Delaware, and a citizen of a foreign country, and the amount in controversy exceeds $75,000.  This Court has original jurisdiction under 28 U.S.C. §1331 and §1338(a) because this action arises under, *inter alia*, the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.  This Court has jurisdiction over the state law causes of action pursuant to 28 U.S.C. §1367.

10.     This Court has specific personal jurisdiction over Defendant because Defendant consented to suit in the courts of New York by agreeing to the terms of an End User License Agreement ("EULA"), which required all disputes to be resolved in the courts of New York.  By agreeing to the terms of the EULA, Defendant has purposely directed its activities at the residents of New York, and this litigation results from injuries that arise out of or relate to a breach of the EULA and  violation of intellectual property rights covered by the EULA,

including copyrights to software.  The exercise of specific personal jurisdiction, in this case, is reasonable and necessary to prevent the unlawful use of GFI's valuable software, the use of which is controlled by the EULA.

11.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3) in that Defendant is subject to the Court's specific personal jurisdiction by agreement with Plaintiff in the EULA, agreed to by Defendant, by which disputes between the parties would be resolved in the courts of New York.

## FACTUAL BACKGROUND

12.    On information and belief, GITN is the official network provider for the government of Malaysia and provides a centrally managed and integrated network to facilitate communications to and from all federal and state government agencies and local authorities in Malaysia.  GITN, as an operating unit of Telekom Malaysia, is responsible for providing reliable and efficient network infrastructure, connectivity and security services to all affected agencies of Malaysia on a nationwide basis.

13.    GFI is the owner of the Exinda Software, which is made available to customers as a software product and is designed to enhance network performance, management, and operations for telecommunications networks.  The Exinda Software focuses on the user experience of key applications to optimize bandwidth traffic capacity.  It facilitates (a) real-time network monitoring to identify usage by applications, whether critical or unsanctioned; (b) dashboards to show network usage, traffic bottlenecks, and problem areas; (c) the set-up of policies to prioritize the consumption of bandwidth by users, applications and websites; (d) pre-built reporting output for better management; (e) data acceleration and caching; and (f) modeling

and data interaction to auto-generate recommendations for repair and improvement of network performance.

14.     The Exinda Software is typically delivered in the form of a computer server or hardware (known as an "Appliance") with the Exinda Software installed, to be deployed to each location where management and optimization are required.  Upon deployment and activation, the Exinda Software is inserted directly into a network's flow of data and is a critical component in the delivery of applications and data over a customer's network infrastructure.

15.     As a software developer and vendor, GFI owns and licenses all copyrights in the computer code which forms its software products, including the Exinda Software, including all new and/or derivative works of any computer code.  GFI is the owner of all the copyrights and trade secrets associated with the Exinda Software by virtue of an assignment of rights by the original owner of all intellectual property rights to the software, Exinda Networks Pty Limited.

16.     On January 24, 2023, GFI registered its claim to ownership of the version of Exinda Software titled "GFI Exinda Network Orchestrator 7.5" with the United States Copyright Office.  Exinda Network Orchestrator 7.5 is an updated version of earlier Exinda Software.  A copy of Registration No. TX 9-217-012 covering the Exinda Software is attached as Exhibit A.

17.     On May 31, 2023, GFI registered its claim to ownership of the version of Service Delivery Point ("SDP") software titled "Exinda Service Delivery Point – Version 2.6.2" with the United States Copyright Office.  SDP Version 2.6.2 is an updated version of earlier Exinda SDP software.  A copy of Registration No. TX 9-268-950 covering the Exinda SDP software is attached as Exhibit B.

18.     GFI puts copyright notices in its software and accompanying written materials and requires appropriate licensing terms and conditions, incorporating technological protective

measures to alert GFI if and when unauthorized use of the software is occurring.  Such protective measures include the means for monitoring the usage of licensed software, including the Exinda Software.

19.     Until October 31, 2022, GFI distributed the Exinda Software and Appliances in Malaysia through an authorized distributor, Usagi Technology Sdn Bhd ("Usagi").  On information and belief, GITN had licensed a total of 10,645 distinct Exinda Software Product Keys and as many Appliances through Usagi since 2008.

20.     As the registered customer and licensee of the Exinda Software licenses, GITN was sold the Appliances and issued the Exinda Software Product Keys together with the corresponding licensing certificates, which indicated a subscription expiration date.

21.     GITN, as a licensee of Exinda Software, deploys Appliances with Exinda Software at various host locations such as offices and data centers owned by thousands of federal and state government ministries, agencies, local authorities, and other third-party users (collectively "Host Locations").

22.     On information and belief, GITN connects all server locations where the Appliances with Exinda Software are deployed to its network (the "GITN Network"), receives all software updates for distribution to these Host Locations, and raises tickets for and receives technical support from GFI.  GITN centrally manages, from its Network Operations Center in Cyberjaya, the usage of all the Appliances and the Exinda Software at the various Host Locations on the GITN Network using the Exinda SDP software, and receives revenue and/or cost reimbursement in consideration for this service.

23.     Upon the receipt and activation of these Exinda Software Product Keys from GFI, GITN undertook to be bound by the relevant EULA.  The EULA applicable to GITN's license subscriptions contained the following express terms:

> "LICENSE GRANT: The SOFTWARE is licensed, not sold. Upon the valid purchase of the SOFTWARE and except as otherwise specified in an accompanying license summary, invoice or other documents evidencing purchase of the software license, Exinda Networks Pty Ltd ("EXINDA"), grants you a non-exclusive, non-transferrable **license to use the SOFTWARE during the subscription period** on servers connected to a maximum number of user computers not exceeding the number of user computers specified in the packaging accompanying the SOFTWARE on in any Supplemental Agreements."

24.     The EULA is presented at the beginning of the installation of each Exinda instance, and the person implementing the installation is required to "accept" the terms and conditions or the installation does not continue.  This is well known in the industry as a "click-wrap" agreement. It is indisputable that the license to use the Exinda Software is terminated upon expiration of the relevant subscription period.

25.     GFI manages the licensing of Exinda Software and provides software patches, updates as well as technical support to all registered customers of the Exinda Software worldwide using the Exinda Business System ("EBS").  GITN's status as a licensee of the numerous Exinda Software Product Keys is thus maintained on record in the EBS.

26.     Among other functionalities, the EBS also receives telemetry data transmitted on a daily basis from various Host Locations where the Exinda Software is running to detect user activity at a location in real-time, to allow GFI software developers to (a) monitor the health, security and performance of applications; and (b) monitor and detect any unauthorized use of the

Exinda Software.  Telemetry contains information including serial number, product key and software version and reports that an Appliance and Exinda Software is active.

27.     With the Exinda Software being a critical network tool, the Exinda software transmits data daily into the EBS.

28.     In the past, GFI and GITN worked closely to deploy and configure the Exinda Software in a variety of critical GITN environments and applications.  This included network policies to control traffic based on application type, the allocation of bandwidth to priority applications, and reporting on business hour usage for cross-billing at various ministries within the government.

29.     Given the volume of network Appliances running the Exinda Software licensed to GITN at multiple locations in Malaysia, GFI also developed for, and licensed to GITN, the SDP software.  SDP enables GITN to manage the Exinda Software on the GITN Network from a central location.

30.     SDP can only be used to manage GFI's proprietary Exinda Software environment and provides one centralized application to see across the entire network of Exinda Software at GITN.  SDP facilitates, among other things, the execution of the following functions by GITN: (a) monitoring the health, security, and performance of applications; (b) sending software updates and simple commands; (c) Exinda appliance fleet monitoring for alarms using SNMP (a feature created specifically for GITN); and (d) custom reporting for GITN for cross-billing to other entities and agencies.

31.     SDP achieves this by connecting each Appliance at the Host Location where the Exinda Software is deployed to GITN's Network Operations Center. GITN and GFI's support staff regularly collaborated online with SDP to assist GITN with various needs.  Access by GFI's

support staff was enabled continuously by SDP for over ten years until approximately October 14, 2022, when GFI's access to SDP was suddenly disabled by GITN.

32.     A contract existed collaterally between GFI and GITN with the purchase of Exinda Software licenses and the provision of Product Keys to GITN, by conduct of the parties.  The SDP software and facility were provided by GFI to GITN in partial consideration of and in exchange for GFI's access to SDP and receipt of telemetry data via the EBS (the "Collateral Contract").

33.     GFI, through its related Dubai company, Aurea FZ, LLC, had acquired the Exinda Software from Exinda Networks Pty Limited on or about March 31, 2020, and proceeded with the formalities of transferring all distributorships, including that of Usagi, to the successor entity.

34.     On information and belief, GITN had notice of the change of ownership of the Exinda Software business from Usagi based on the close dealing between GITN and Usagi.

35.     After the transfer of operations and internal corporate reorganizations that followed, new management in GFI investigated GITN's portfolio of Exinda Software Product Keys on or about May of 2022.  At that time, GFI noticed irregularities in the pricing and management of the business associated with the Exinda Software in Malaysia.

36.     It was clear that, upon reviewing underlying documents and considering all available information, the Exinda Software and Appliances were being sold to Usagi for distribution to GITN at a substantial discount from even the cost pricing of the product as packaged.  Apart from the renewable license subscription, the cost of the product comprised hardware for a range of data shaping capacities, power cords, network interface cards, and technical support and training.

37.     Management at GFI in charge of managing the business noticed that the prices for the Exinda Software that were being charged to GITN were extremely and unsustainably low and

commercially non-viable.  The prices charged guaranteed that GFI software and services were being sold at a loss.

38.     On or about July 25, 2022, GFI issued a notice to terminate the Exinda Partnership Distribution Agreement dated January 11, 2013, between its predecessor in interest and Usagi as the Malaysian distributor of the Exinda Software.  The termination took effect at the end of the term on October 31, 2022.  GFI was informed by Usagi's representative that GITN's procurement team was aware of the pricing and renewal issues from the outset.

39.     GFI sought to engage in commercial negotiations via Usagi and directly with GITN, to discuss the terms for renewal of expiring license subscriptions for the Exinda Software.  GFI has evidence that of the 10,645 distinct Exinda Software Product Keys and Appliances that GITN had purchased since 2008, (a) there were 6,865 Exinda Software subscriptions licensed to GITN with expiration dates ranging from July 1, 2022, to December 31, 2022; and (b) there were 3,780 active Exinda Software subscriptions licensed to GITN with expiration dates beyond December 31, 2022, varying from between February 13, 2023, and February 18, 2026.

40.     GITN had also been informed of GFI's new commercial pricing for the renewal of expired and expiring Exinda Software since at least July of 2022 via Usagi, with whom GFI had been in discussions. GITN, GFI and Usagi met directly on October 19, 2022, on a Zoom video meeting attended by representatives of the three entities to discuss the pricing and renewal options (the "GFI/GITN Call".)

41.     Following the GFI/GITN Call, GITN ignored GFI's multiple emails and attempts to again discuss the terms of renewal of software licenses for the Exinda Software well in advance of the expiration, in spite of express notice of the fact that expired Exinda Software licenses were

still in use and of the impending expiration of 5,923 licenses on December 31, 2022.  GFI had

explicitly raised these issues with GITN during the GFI/GITN Call.

42.      In December 2022, GFI solicitors in Malaysia delivered an urgent letter dated

December 14, 2022, to GITN to bridge the communication gap and call for urgent negotiations on

commercial terms for the renewal of all expired and expiring Exinda Software licenses.  The letter

was hand-delivered to GITN's registered corporate secretarial address and emailed to its principal

officers on December 14, 2022.

43.      GITN thereafter entered into what ostensibly appeared to be genuine commercial

discussions with GFI between December 20, 2022, and December 29, 2022.  This included a Zoom

video conference ("CEO Conference") between Azhar Mustapha, GITN's CEO, and Eric

Vaughan, GFI's CEO, held on December 20, 2022. Throughout December 2022, GITN was still

using Exinda Software which expired in July 2022; GFI had expressly reserved rights while

negotiations continued.

44.      Following the CEO Conference, in an email from GITN's CEO dated December

26, 2022, GITN expressed the following statement:

> "*We can only agree based on the price stated as per existing (sic) contract, your kind
> consideration is much appreciated else we have no option other than to **discontinue and
> uninstall Exinda Software services** for the above sites that required renewal. The rest of
> sites continue until expiry of SS licenses*"

GFI's CEO responded to this email the same day, on December 26, 2022:
> "*Dear Azhar,*
>
> *Thank you for your email.  You and I have discussed this, and I've explained the origin to
> you of the problem, so you understand the pricing. I have already approved the best
> pricing we provide for Exinda to any partner in consideration of the long relationship. It
> is not helpful to keep pointing out (as others have already done for 5 months) how much*

*of an increase this is. Your customer may not understand that they had artificially low pricing in the past, so they have been paying a fraction of both what they should pay, and what the marketplace has to offer for equivalent functionality.*

*We are getting very short on time, with only 8 days left to receive a purchase order to not trigger a significant additional legal liability in terms of copyright infringement (and as I pointed out in my previous email, this already is an issue for the current expired licenses, but we are withholding further action while you and work to solve in good faith )and, interruption in service as the boxes will actually shut down when their grace periods (which vary widely) take effect.*

*I have already authorized a 40% discount, which as I've said, is the highest discount we have offered. If you will make a counter proposal that is reasonable, I will consider that, but know that it can't be too far off from what GFI has already quoted and we are wasting time just discussing that this is an increase. Please send me your counter proposal for which you will assure me that GITN will issue a non-cancellable purchase order no later than 12/31/22 for the renewing nodes and I will give it due consideration. It will not be helpful to propose numbers anywhere near the previous cost.*

*Thank you also for connecting on Whatsapp. Given that we are on such a short timeframe, I will remain available to discuss the matter even through the holiday weekend. Please signal me there if we need to speak."*

45.     After this brief period of expressions of good faith on the part of GITN, GITN's CEO sent a letter to GFI dated December 29, 2022, abruptly terminating the commercial discussions.  In the letter, GITN stated the following:

"*GITN would like to further inform that, since GITN and GFI USA, Inc were not able to reach a mutual agreement on the new price for the Exinda Software License, GITN has decided not to continue the subscription of the Exinda Software License for the 5,923 licenses expiring on 31st December 2022."*

46.     Based on GFI senior management discussions with GITN's CEO, GITN understood that any use of the expired Exinda Software would be unlawful and that is why Mr. Mustapha had said on December 26, 2022, that failing any agreement on the pricing for renewals, GITN would discontinue and uninstall Exinda Software services.

47.     GFI was unaware of GITN's preparedness to transition to an alternative network bandwidth management software at that stage. In the customary way, especially given the large-

scale and widely dispersed installation at GITN, GITN would have discussed the logistics for any transition from the Exinda Software to other third-party software as a replacement well prior to the expiration of the existing agreement, but they oddly did not.  GFI also demanded that GITN pay for all use of the Exinda Software licenses that had expired prior to December 31, 2022, yet had remained in use by GITN,  and issued invoice number INV00332542 on December 30, 2022, in the amount of $2,442,096 ("GITN 2022 Invoice").   However, GITN again ceased all communications with GFI and this invoice remains unpaid.

### COUNT I – BREACH OF CONTRACT

48.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 47 above.

49.      GFI subsequently discovered from an internal audit of telemetry data transmissions received by the EBS that GITN had in fact continued and is still continuing to run the Exinda Software on the GITN Network after the expiration of many of its license subscriptions at a number of Host Locations. GITN failed to discontinue network services and uninstall the Exinda Software after the expiration of the Exinda Software license subscriptions as promised.

50.     GFI discovered that Exinda Software is running on 1,853 Host Locations with Product Keys expiring on or before December 31, 2022, that continued to transmit telemetry data after the expiration of their license subscriptions based on information extracted from the EBS.  Of these, 130 Appliances still transmitted telemetry data after January 1, 2023, despite GITN's obvious efforts to hide and mask their usage.  On information and belief, GITN acted in the belief their unlicensed use of the Exinda Software would not be noticed, but the Exinda Software includes telemetry functionality which allows GFI to remotely monitor the use of the software.

51.     At one point, following a call with GFI's CEO in October of 2022, telemetry data from many devices stopped pinging in large numbers, indicating that GITN became aware that their use was being monitored.  GFI has documented both the unauthorized use of Exinda Software, and the attempts to hide the unauthorized use by disabling telemetry functionality on the Exinda Software.  Efforts to obfuscate the use of Exinda Software were so intense that GITN went so far as to turn off telemetry functionality on devices that were properly licensed and paid for, i.e., with expiration dates in the future.

52.     GFI has compiled a list of detected uses of the Exinda Software beyond the expiration date of its subscription license extracted from the EBS.  The list is substantial, and well beyond any argument that the use was inadvertent or accidental.

53.     A binding agreement existed between GFI and GITN, granting GITN the right to use the Exinda Software in exchange for license fees, and subjecting GITN to the terms of the EULA.

54.     At all times during the term of the agreement, GFI performed all that was required of it, including providing the Exinda Software on Appliances.  At no time during the term of the agreement has GITN complained of any failures of GFI to perform its obligations under the agreement.

55.     After the expiration of licenses, GITN had no legal right or permission to use the Exinda Software.

56.     GITN did in fact continue to use GFI's Exinda Software in breach of the EULA, as demonstrated by GFI's internal audit of telemetry data transmissions received by the EBS.

57.     GFI's SDP software is specifically designed and built to work within GITN'S network when operating under the influence of GFI's Exinda Software.  The use of GFI'S SDP software carries an implied covenant by GITN to allow access to the SDP software by GFI.

58.     By disabling, disconnecting, re-configuring or otherwise blocking GFI's access to the SDP software, GITN has committed a breach of the implied covenant to provide access to the SDP software in a way that illegally hides improper, unauthorized and/or unlicensed use of GFI's Exinda Software.

59.     GFI has been damaged by GITN's breaches by at least the loss of license income at the current commercial rates sought by GFI during negotiations, and by causing unnecessary, expensive and burdensome investigative actions which could have been avoided by simply allowing GFI access to the SDP.

## COUNT II – COPYRIGHT INFRINGEMENT

60.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 59 above.

61.     Plaintiff owns copyrights in the code, documentation, specifications, libraries, and other materials that comprise the Exinda Software and the SDP software.

62.     The copyrighted code in the Exinda Software is substantially reproduced in executable machine code in the random-access memory (RAM) of the Appliances that are connected to the GITN Network every time the Exinda Software is re-launched when the Appliances are powered on, rebooted or when the Exinda Software is otherwise restarted.

63.     The Exinda Software must be re-launched in any one or more of the following circumstances: (a) after the installation of software updates; (b) after changing configuration

settings; (c) after changing network hardware; (d) after a system crash or unexpected shutdown; and (e) after a major network outage.

64.     On December 23, 2022, GFI had also given notice to GITN that it regarded any use of the Exinda Software past its expiration dates as copyright infringement.  By email, GFI management explicitly notified Mr. Mustapha of GITN as follows:

> *"Further to my email below, I have instructed GFI's solicitors to withhold any further action in respect of the smaller number of licenses that are running without valid subscription licenses awaiting your timely response. However, I wanted to make it clear that GFI is reserving all rights in respect of all unauthorised use of our software without a valid subscription license…"*

65.     Based on telemetry data received by the EBS, GFI was able to ascertain that Appliances at many locations with licenses expiring on or before December 31, 2022, which were still transmitting telemetry data have re-started multiple times after the expiration of the Product Key.  This fact is observable from the last contact date and uptime data, which is the duration the Exinda Software had been running at the time the telemetry data was received. Each such re-start, after the expiration of GITN's license, is an infringement of GFI's copyrights to the Exinda Software.

66.     GITN has infringed and is continuing to infringe GFI's copyrights in the Exinda Software by causing the reproduction of GFI's object code each time GITN causes the relaunch or caused the relaunch of the Exinda Software on the GITN Network after the expiration of license subscriptions.  GITN's actions are in flagrant, willful and knowing disregard of GFI's copyrights to the Exinda Software.

67.     When confronted with the fact of its copyright infringement, GITN has displayed an intent to continue to infringe, even while knowing it is infringing.  When GFI attempted to

collect on the GITN 2022 Invoice for the use of the software after the expiration of licenses prior to December 31, 2022, GITN indicated in an email dated February 17, 2023, that it intended to continue the unauthorized use of the Exinda Software without paying license fees.  GITN stated:

> "*We would like to inform you that GITN is no longer (sic) have any intention to renew expired Exinda Software Subscription (SS) licenses.*
> *We understand that we will lose access to new features, product updates, enhancements, fixes or technical support due to this."*

68.    GFI owns valid and registered copyrights to the Exinda Software. Exhibit A is a true copy of Registration No. TX 9-217-012 which covers the Exinda Software, including all versions and derivatives.

69.    GITN has infringed those valid and registered copyrights by using the Exinda Software after the expiration of GITN's license.  Use of copyrighted works without a license is *de facto* and *per se* copyright infringement.

70.    GFI owns valid and registered copyrights to the SDP Software.  Exhibit B is a true copy of Registration No TX 9-268-950 which covers Exinda's SDP Software, including all versions and derivatives.

71.    GITN has infringed those valid and registered copyrights by using the SDP Software in conjunction with the Exinda Software after expiration of GITN's license.  Use of copyright works without a license is *de facto* and *per se* copyright infringement.

72.    GITN's infringement has damaged GFI, measured by statutory per infringement amounts and/or by loss of royalty revenue.  GITN's infringement is willful, wanton, knowing and/or intentional.

73.     By Defendant's actions alleged above, Defendant has infringed and will continue to infringe the copyrights to Plaintiff's Exinda Software, in violation of GFI's exclusive rights at least under 17 U.S.C. § 101 et seq. without any authorization or other permission from GFI.

74.     Such unauthorized and unlicensed use by GITN of GFI's Software Products includes inducing, causing and materially contributing to the infringing acts of others, including employees of GITN.   GITN has further allowed and assisted others to copy and distribute GFI's Exinda Software.

75.     Defendant's infringement of GFI's copyrights has been deliberate, willful, and in utter disregard of GFI's rights.

76.     Defendant has realized unjust profits, gain, and advantages as a proximate result of its infringement.

77.     Defendant will continue to realize unjust profits, gain, and advantages as a proximate result of its infringement as long as such infringement is permitted to continue.

78.     As a direct and proximate result of Defendant's willful copyright infringement, GFI has suffered, and will continue to suffer, monetary loss to its business, reputation, and goodwill. GFI is entitled to recover from Defendant, in amounts to be determined at trial, the damages it has sustained and will sustain, and any gains, profits, and advantages obtained by Defendant as a result of Defendant's acts of infringement and use and publication of copied materials.

79.     Plaintiff GFI is entitled to an injunction restraining Defendant GITN from engaging in any further such acts in violation of the United States copyright laws. Unless Defendant is enjoined and prohibited from infringing GFI's copyrights and inducing others to infringe GFI's copyrights, and unless all infringing products and data generated by the use of

GFI's copyrighted material are seized, Defendant will continue to intentionally infringe and induce infringement of GFI's copyrights.

## COUNT III – TRESPASS TO CHATTELS

80.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 79 above.

81.     Defendant's activities resulted in the unauthorized access to valuable computer software that allowed Defendant to perform valuable computer services without having to pay for the underlying software that generated the value.

82.     By failing to pay for the use of GFI's copyrighted Exinda Software, while knowing that its license to use GFI's copyrighted software had expired, GITN has, without authority, used computer software without paying for a required license with the intent to appropriate use of the copyrighted software for free and with intent to trespass on the software owned by GFI.

83.     Defendant's actions resulted in unauthorized intrusion into and access to GFI's software and hardware.

84.     Defendant intentionally caused this conduct, and this conduct was unlawful and unauthorized.

85.     Defendant's actions have caused injury to GFI and have interfered with the possessory interests of GFI over its software.

86.     Plaintiff seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

87.     As a direct result of Defendant's actions, Plaintiff has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendant's actions are enjoined.

## COUNT IV – CONVERSION

88.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 87 above.

89.     GFI owns all rights, title, and interest in the Exinda and SDP Software Products. Defendant has interfered with, unlawfully and without authorization, and dispossessed GFI of control over its Software Products.

90.     Defendant has interfered with and converted computer software and hardware and deprived GFI of possession and use of its property.

91.     Defendant has, without authority, used a computer and computer software with intent to generate data created by GFI's software with intent to possess all such generated data, without authority.

92.     Defendant has converted computers, software and data generated by software, and deprived GFI of its right to receive payment for such computers and software.

93.     Plaintiff seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial, including without limitation the return of any data generated during the period of unauthorized and unlicensed use of GFI's software and the return of Defendant's ill-gotten profits.

94.     As a direct result of Defendant's actions, Plaintiff has suffered and will continue to suffer irreparable harm for which no adequate remedy at law exists, and which will continue unless Defendant is enjoined.

## COUNT V – UNJUST ENRICHMENT

95.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 94 above.

96.     The acts of Defendant complained of herein constitute unjust enrichment of the Defendant at the expense of GFI in violation of common law.  Defendant has used, without authorization or license, software belonging to GFI to facilitate unlawful conduct which inures to the benefit of Defendant.

97.     Defendant profited unjustly from its unauthorized and unlicensed use of GFI's property.

98.     Defendant used, without permission, the facilities of GFI's property.

99.     Defendant used, without authorization, the facilities of GFI's software and hardware to infringe GFI's copyrights.  Defendant profited unjustly from GFI's intellectual property.

100.    Upon information and belief, Defendant had an appreciation and knowledge of the benefit it derived from its unauthorized and unlicensed use of that property.

101.    Retention by Defendant of its profits derived from its malfeasance would be inequitable.

102.    Plaintiff seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial, including without limitation disgorgement of Defendant's ill-gotten profits, which include at least the current market value of the license Defendant would have required to use GFI's software.

103.    As a direct result of Defendant's actions, Plaintiff suffered and will continue to suffer irreparable harm for which no adequate remedy at law exists, and which will continue unless Defendant's actions are enjoined.

## PRAYER FOR RELIEF

WHEREFORE, GFI demands judgment:

A.    preliminarily and permanently restraining GITN from (1) committing or inducing further breaches of contract in violation of the EULA between GFI and GITN, as well as express and implied license terms related to the SDP Software; (2) infringing GFI's copyrights to the Exinda Software and the SDP Software; (3) committing further acts that convert GFI property to GITN; (4) committing further acts to unjustly enrich itself; and  (5) committing further acts that trespass the chattels of GFI;

(B)    directing GITN to delete all copyrighted content owned by GFI from computers and websites under GITN's control to the extent necessary to prevent further infringement by GITN of the infringed works;

(C)    awarding GFI its actual compensatory damages with respect to each cause of action in an amount to be determined at trial, or, of GFI so elects, with respect to the second Count, statutory damages in an amount to be determined at trial for each of the infringed works, in an amount not less than $750 and up to $30,000 for each work infringed, which may be increased to $150,000 per work infringed where, as here, the infringement is willful;

(D)    requiring disgorgement to GFI of the profits made by GITN attributable to its unlawful conduct on all claims and counts for relief to the extent not taken into account in computing GFI's actual damages;

(E)    awarding punitive damages for GITN's unlawful and wanton conduct;

(F)     awarding GFI its costs in this action, including reasonable attorney's fees;

(G)     directing GITN to file with this Court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which it has complied with the Court's judgment; and

(H)      awarding GFI such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff GFI demands a trial by jury on all claims asserted in its Complaint.

Respectfully submitted,

PENNINGTON OLIAK, PLLC

/s/ Beth A. Oliak

Beth A. Oliak (BO3730)
Edward A. Pennington (pro hac to be filed)
1055 Thomas Jefferson Street, NW, Suite L35
The Foundry Building
Washington, DC  20007
(phone) (202)897-2725
(fax) (202)838-8245
oliakb@pennoliak.com
epennington@pennoliak.com

*Attorneys for Plaintiff GFI USA, LLC*